## SAMUEL B. ALLEN & CO. *v.* DAVID C. LYLES.

1. CUSTOM OF MERCHANTS: HAVE NO FORCE BEYOND LOCALITY WHERE THEY EXIST.—The custom of merchants on a particular subject, will affect such transactions only, as take place in the locality where it is shown to exist; and hence, when a duty is alleged to be imposed, or an exemption allowed, by the custom of merchants in reference to a particular transaction, the custom must be shown to exist in the place where the transaction was concluded.

2. SAME: HOW PROVEN: EVIDENCE CONFINED TO THE PLACE WHERE IT IS ALLEGED TO EXIST.—Where the inquiry is as to the custom of merchants in a particular place, it is incompetent to show that the alleged custom does or does not exist in other localities; and hence, where the defence relied on, was an alleged custom of merchants in Cincinnati, to insure all goods shipped to their customers, unless otherwise ordered, it is incompetent to show what is the custom of merchants in that respect in New Orleans, New York, &c.

3. EVIDENCE: INTERESTED WITNESS: JURY SOLE JUDGE OF HIS CREDIBILITY, ETC.—The statute (Rev. Code, 510, Art. 190), rendering parties, and persons interested in the result of the suit, competent witnesses, provides, "that the court and jury shall give such weight to their testimony, as in view of the situation of the witness, and other circumstances, it may be fairly entitled to." This provision plainly means, that the weight to be given to the testimony of a party testifying in his own behalf, shall be left to the determination of the jury under all the circumstances under which it may be given; and, in consideration of the other testimony submitted to them, it will be error therefore for the court to charge the jury that, "if an interested witness is uncontradicted, and the jury see nothing in his mode of testifying, his position in the case, and his demeanor on the stand, to excite suspicion, they are bound to believe him."

ERROR to the Circuit Court of Hinds county.  Hon. John Watts, judge.

*T. J.* and *F. A. R. Wharton,* for plaintiffs in error.

*Johnston* and *Shelton,* for defendant in error.

Allen & Co. *v.* Lyles.

HANDY, J., delivered the opinion of the court.

This action was brought by the plaintiffs in error, to recover for certain goods and merchandise, sold and delivered, or shipped to the defendant, at his request.

It appears, by the record, that the goods were ordered by letter of the defendant, from the plaintiffs, who resided in Cincinnati; and that the goods were shipped in due time, by a steamboat, from that point to Vicksburg, for the defendant, who resided in Hinds county in this State, without insurance; and, it appears to be conceded, that the goods were lost by the sinking of the steamboat. The defence rests upon two grounds: 1st. That the defendant had given the plaintiffs instructions previously, to have all parcels of goods to be forwarded to him, insured by some reliable company; and 2d. That, independent of this, the plaintiffs were bound by the regular and uniform course of trade, and the custom of merchants at Cincinnati, to insure all such shipments, unless positively instructed to the contrary.

On the trial, the plaintiffs read the deposition of Markward, a clerk in their house, who testified, among other things, that the goods were sold upon the defendant's orders in writing, and shipped on a steamboat at Cincinnati for Vicksburg, and bill of lading taken. These orders are produced and proved by the witness, and they contain no directions that the goods should be insured. He further testified that, since 8th March, 1850, the defendant had purchased fifteen bills of goods from the plaintiffs, and that only three of these were insured by the plaintiffs. The first of these, in May, 1852, was done without instructions from the defendant, and inadvertently, by being included in a large lot of goods shipped by them at the same time, and which were insured by instruction. The second was a bill of goods, ordered by the defendant on the 24th August, 1854; and the third, a bill ordered by him on the 15th April, 1855. The orders, in these last two cases, specially directed that the goods should be insured; and they are the only instances in which anything was said about insurance, in any of his correspondence with the plaintiffs.

On cross-examination, he testified that it was not the custom of merchants at Cincinnati to insure goods shipped on steamboats, unless instructed to do so by the purchasers; and when delivered

to the steamboat, they are at the risk of the purchaser; that the steamboat on which the goods in question were shipped, was sunk on the trip, and the goods were lost; that there were no instructions given to insure the goods, and therefore they were not insured.

The defendant then testified in his own behalf, that he never received any of the goods sued for; that he had called at plaintiffs' store, in Cincinnati, and bought goods of them previous to the time of ordering the goods sued for, and had told them to insure all goods which he should purchase; that the first bill of goods he had purchased of them, was insured by them. He was then asked by his attorneys what was the custom of merchants in New York, Philadelphia, Boston, and Cincinnati, as to insuring goods against the dangers of transportation, in the absence of instructions upon the point. The plaintiffs' counsel objected to the defendant's answering as to the custom mentioned; but the objection was overruled, the plaintiffs excepting. And the defendant then stated, that it was the custom of merchants at those places, always to insure goods, unless otherwise instructed. On cross-examination, he stated that he had bought about thirty or forty bills of goods in New York, and three or four in Philadelphia, and they were all insured; that he had dealt with two or three houses in Cincinnati, besides the plaintiffs', but never conversed with the merchants of these cities as to their custom in relation to insuring without instructions, and only knew their custom from seeing bills insured, and from what he had heard others say; that he did not know what was the custom of merchants upon the subject at Cincinnati, and did not know how many of the bills of goods he had purchased of the plaintiffs were insured, or how many of them he had instructed them to insure; that he did not direct them to insure the goods sued for, but had given a verbal order previously to one Seymour, a clerk of the plaintiffs, to insure all goods they should send him, and afterwards gave them instructions to have particular bills insured.

The defendant also introduced George W. Gibbs, who testified, that he had been a merchant for about twenty-one years, in Hinds county, and had purchased goods in the cities above named, and the other principal cities in this country. He was then asked as to the custom of merchants in those cities in relation to insuring

goods; to which the plaintiffs objected, but the objection was overruled, the plaintiffs excepting; and the witness stated, that from what he had observed, from his own dealings and those of others, and from what he had heard others say, it was the custom in those cities to insure goods to be forwarded in all cases, unless otherwise instructed.

On cross-examination, he stated that he did not know what was the custom among merchants of Cincinnati upon the subject, except from his own dealings there, and could not say with how many merchants of the cities mentioned, he had conversed upon the subject.

The first, second, and third errors assigned, are the admission of the evidence in behalf of defendant, as to the custom among merchants in New York, and several other cities in this country, in relation to insuring goods sold and shipped by them. This objection is well taken, and the evidence should not have been received. The issue was, what was the custom among merchants in Cincinnati upon the subject. The fact was susceptible of distinct proof, if any custom prevailed there upon the subject; and the custom in other cities did not tend to prove what was the custom there. Yet, in case of doubt in relation to the custom there, this testimony was calculated to mislead the jury, and induce them to apply the custom in other cities to Cincinnati. If the custom prevailed there, as alleged by the defendant, it was incumbent on him to prove it, and from its nature it must have been susceptible of direct proof. This testimony was therefore incompetent.

For the same reason, the court erred in granting the second instruction in behalf of the defendant, which is in these words: "If the jury believe from the evidence, that the custom of wholesale merchants, in this country, at and before the date of this transaction, was to insure all goods forwarded unless instructed not to insure, and that plaintiffs departed from such custom by failing to insure the goods charged for in this account sued on, they should find for defendant."

Under this instruction, and upon the evidence referred to in the above assignments of error, the jury might have found for the defendant, though they believed from the evidence, that the custom mentioned in the instruction did not prevail in Cincinnati. Indeed,

it is highly probable that this was the ground on which they found their verdict. For both the defendant, and his witness Gibbs, state that they did not know what was the custom among merchants in Cincinnati upon the subject; and the only evidence before them, in relation to such custom there, was that of Markward, who testified, that it was not the custom of merchants there to insure goods sold and shipped by them, unless instructed to do so. This witness was a resident of that city, a clerk and salesman of the plaintiffs, and was unimpeached; yet the verdict upon this point was against his testimony, which could scarcely have been the case, unless they were misled by this instruction.

The next error assigned, is the fifth instruction granted in behalf of the defendant, as follows :—

"The statute allowing interested witnesses to testify, does not intend, by prescribing the manner in which such testimony shall be viewed by the jury, to declare that such testimony shall have no weight, because of interest. If an interested witness is uncontradicted, and the jury see nothing in his mode of testifying, his position in the case, and his demeanor on the stand, to excite suspicion, they are bound to receive his testimony as true."

The statute, under which the defendant was allowed to testify, provides, that in such cases, "the court or jury shall give such weight to the testimony of parties and interested witnesses, as in view of the situation of the witness and other circumstances, it may be fairly entitled to:" Rev. Code, 510, Art. 190; and the court instructed the jury to that effect, at the instance of the plaintiffs. It was plainly the intention of the statute, that the matter of the weight to be given to the testimony of a party to a suit, testifying in his own behalf, should be left to the jury to determine under all the circumstances under which the testimony should be given, and in consideration of all the evidence otherwise submitted to them in the cause. These circumstances are frequently of a slight character, and apparently insignificant, yet they may tend very plainly to induce the jury to give little or no weight to the testimony. The witness might be "uncontradicted by other witnesses, and might exhibit nothing in his mode of testifying, his position in the case, and his demeanor on the stand, to excite suspicion," as stated in this instruction, and yet his conduct as stated

by himself, might be inconsistent with facts shown in the case, or the jury might think that he had not satisfactorily explained circumstances tending to show his liability. Under these and all circumstances, the jury are to determine the weight to be given to the testimony; and the rule upon that subject is comprehensively stated in the statute. The court should not, therefore, undertake to state to the jury under what circumstances they must receive the testimony of a party to a suit as true; but the instruction should be such, as to leave the question for their decision, upon whatever circumstances may appear in the case, calculated to show what weight should be given to the testimony. This is fully done in this case, by stating to the jury, at the instance of the plaintiffs, the rule established by the statute; and the instruction under consideration, was calculated to mislead, in limiting that rule, and confining the consideration of the jury to particular circumstances, as the only case in which they should not give full weight to the testimony.

For these errors, the judgment must be reversed, and the cause remanded for a new trial.