(55 South. 580.)

No. 18,349.

INGRAM v. LOUISIANA & N. W. R. CO. et al.

(May 22, 1911. On Application for Rehearing, June 17, 1911.)

*(Syllabus. by the Court.)*

1. MASTER AND SERVANT (§ 248*)—INJURY TO SERVANT — CONTRIBUTORY NEGLIGENCE — LAST CLEAR CHANCE.

Where defendant railroad company has a last clear chance to prevent an accident and does not avail itself of it, it will be mulcted in damages.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 801–804; Dec. Dig. § 248.*]

2. MASTER AND SERVANT (§ 282*)—PERSONAL INJURIES—EXEMPLARY DAMAGES.

Where defendant's employé in operating his train displays reckless disregard for human life, damages will be awarded for any resulting loss and injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. 'Dig. §§ 997–999; Dec. Dig. § 282.*]

3. OPERATION OF RAILROADS — CARE REQUIRED.

Railroad companies are held to the greatest care and diligence both in regard to the machinery and equipment of their roads and the acts of their officers and agents. Hanson v. Railroad Co., 38 La. Ann. 111, 58 Am. Rep. 162; Lynn v. Antrim Lumber Co., 105 La. 455, 29 South. 874.

Appeal from Eleventh Judicial District Court, Parish of Natchitoches; S. J. Henry, Judge.

Action by R. T. Ingram against the Louisiana & Northwestern Railroad Company and others. From a judgment for plaintiff, defendants appeal. Modified and affirmed.

Scarborough & Carver and Alexander & Wilkinson, for appellants Frost-Johnson Lumber Co. and Prestridge, Buchanan Logging Co. John A. Richardson, for appellant Louisiana & N. W. R. Co. Breazeale & Breazeale, for appellee.

SOMMERVILLE, J. Plaintiff was employed by defendant railroad company as section foreman, having supervision of some 6 miles of track, embracing the track on a trestle or bridge running some 1,600 feet over Black Lake, in Natchitoches parish. This bridge was at an average height of some 23 feet. While traversing this bridge plaintiff was overtaken by a locomotive drawing a logging train, and he was very severely injured.

The railroad company leased some 3 miles of its tracks to the Frost-Johnson Lumber Company and its assignees, including the 1,600 feet of track over Black Lake. The lumber company assigned its lease to the Prestige-Buchanan Logging Company, which company was operating the train at the time of the accident referred to.

Plaintiff sues the three companies named, in solido, for $15,000 in damages. There was. trial by jury, and a verdict and judgment for $10,000, from which the three defendants have appealed.

A large amount of evidence is found in the record, and it has been fully discussed orally and by brief. We have considered it carefully, and we think with the jury that plaintiff has made out a case against defendants. He was on a hand car, returning home from work at the close of the day, when he, and the men with him, saw the locomotive and logging train approaching from the opposite direction. He and his men had a right to

be on the track. It was their duty to keep this certain section of track in good order and repair. They signaled the oncoming train, which signaled in return for them to retrace the way they had come; and they immediately obeyed the order, but the engineer on the locomotive was evidently driving the logging train at a great rate of speed, regardless of the rule of the railroad company to run at a rate not to exceed six miles an hour over the bridge. He was running at a rate of speed several times six miles an hour, and in utter disregard of life and safety of property. [1] It was the bounden duty of the engineer when he saw the hand car with its load of human freight on the track some 1000 feet distant to have stopped his train in time to have avoided the accident and resulting damages. He had a clear chance to have done so, and it was negligence on his part not to have done it. His conduct on the occasion was willful and criminal. This conclusion is strengthened by the remark of the engineer on the evening of the accident to the effect that "he [the section foreman] met the wrong man this evening." It appears that on another occasion, or occasions, plaintiff had met another engineer who had backed off the bridge to permit plaintiff to continue his journey.

Defendants charge that plaintiff was negligent in not stopping, looking, and listening when he started to cross the bridge. We have seen that plaintiff's duty required him to be on the track. But, if he had been negligent, defendants had the last clear chance to have avoided the accident, and they did not avail themselves of it. Plaintiff and his men reversed their hand car as signaled by the engineer, and they earnestly tried to run out of the way of the oncoming locomotive. Defendants claim that plaintiff and his men should have jumped from the hand car. If they had jumped, the hand car would have remained on the track, there would have been a collision, the train perhaps derailed, and all parties killed. The wiser plan was to do as plaintiff did, and as ordered by the engineer of the locomotive, to try and get out of the way. [3] It was inconceivable on plaintiff's part that the engineer would ruthlessly run him and his men down. The engineer seeks to excuse himself by claiming that one of the air brakes on his locomotive was defective. If it was, it should not have remained defective. This is not a sufficient excuse to release defendants. But the testimony does not sustain this contention. If his engine had become suddenly defective, the engineer should have given a distress signal, which would have warned plaintiff to take the chances of jumping and saving himself, rather than to trust himself and his fellows to the humanity of defendant's engineer.

Plaintiff sustained a fracture of the leg, a sprained ankle, a contused shoulder, and injury to the back. These injuries are slight by way of comparison with what they might have been when the hand car came into collision with a rapidly moving train, and was knocked from a bridge or trestle some 23 feet high.

[2] Plaintiff is entitled to both actual and exemplary damages; but we think the verdict is too high.

The verdict and judgment appealed from are amended by reducing them to $5,000; and, as thus amended, the judgment appealed from is affirmed.

### On Application for Rehearing.

LAND, J. Our decree in this case was based on the doctrine of the last clear chance, which implies negligence on both sides. Plaintiff was guilty of negligence in not stopping, looking, and listening before driving his hand car on the bridge. The engineer was guilty of gross negligence in driving his train onto the bridge at a greater rate of speed than six miles an hour.

The engineer discovered the danger when the hand car was at a distance of about 1,000 feet away. He signaled the plaintiff to back the hand car. The plaintiff did so. The engineer stated that, when he found that the locomotive was beyond control on account of a defective air brake, he signaled the plaintiff to jump. Plaintiff testified that he saw no such signal. The inference from the testimony of the engineer is that he could have stopped the train in time to avert the accident, if the air brake had been in proper condition. If such was the case, ordinary prudence demanded the resort to other means to stop the train. An experienced railroad man testified that the train could have been stopped by the use of the reverse lever.

The hand car was lawfully on the track. The question is whether the engineer, as soon as he discovered the hand car on the track, used every effort to prevent a collision; or, in other words, whether he could have avoided the accident by the exercise of that degree of diligence demanded by the emergency of the case. On this issue the evidence is conflicting. The jury heard the witnesses, and viewed the bridge. Their verdict shows that they evidently found that under all the circumstances of the case the train could and should have been stopped in time to avert the accident.

The question was one of fact for practical men to decide, and, after considering the evidence, we are not prepared to say that the verdict is erroneous, especially as there is also evidence tending to show reckless indifference to consequence on the part of the engineer.

The contention that the lessee is not liable because it sublet its franchise to use the railroad tracks is without force, because the lessee is bound both by law, and in this case also by contract, in the same manner as the lessor railroad would have been. Muntz v. Railroad Co., 111 La. 423, 35 South. 624, 64 L. R. A. 222, 100 Am. St. Rep. 495; Hamilton v. Railroad Co., 117 La. 243, 41 South. 560, 6 L. R. A. (N. S.) 787.

On reconsideration, however, we are satisfied that we erred in making any allowance for punitory damages, as there is no evidence that the defendants authorized, ratified, or approved the conduct of the engineer on the occasion in question. See Patterson v. New Orleans & C. R. Light Power Co., 110 La. 797, 34 South. 782, and authorities therein cited.

The small bone of plaintiff's leg was broken, his ankle was sprained, and he was bruised on the shoulder. At the time of the trial of case the plaintiff was able to walk without assistance, but he complained of pains now and then in his ankle, and of severe pains in the back. The attending physician testified that on his first visit to the plaintiff the latter did not complain of pains in his back, but did so the next day, and continued to complain from that time on. The physician further testified that after a thorough examination of plaintiff's back he could not discover any lesion or injury that would account for the pain complained of by the plaintiff, and that such pain might have been the result of malaria or rheumatism. Under these circumstances, we are disinclined to allow any considerable amount for pain and suffering which may have been merely temporary. We are of opinion that an award of $2,000, with costs in both courts, is a sufficient compensation for the injuries sustained.

It is therefore ordered that our former decree herein be amended by reducing the amount to $2,000, with costs in both courts, and, as thus amended, said decree be reinstated and made the final judgment of the court.

And it is further ordered that in all other respects a rehearing is refused.