YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* L. M. DYER ET AL.

[59 South. 937.]

1. CARRIERS. *Personal injuries. Sufficiency of evidence. Negligent construction of platform. Intoxication. Contributory negligence.*

　　The construction of a railroad platform six inches higher than other platforms on the same railroad line, *held* under the facts in this case not to be such negligence as to render the railroad liable to plaintiff for deceased's death.

2. INTOXICATION. *Negligence. Contributory negligence.*

　　A condition, short of inability to exercise any care for his safety, produced by voluntary intoxication, does not relieve a person injured from the necessity of exercising the ordinary care to avoid the injury required under like circumstances of a sober man.

3. INSTRUCTIONS. *Want of evidence. Trial.*

　　It is reversible error for the trial court to grant an instruction where there is no evidence to support it.

APPEAL from the circuit court of Yazoo county.

HON. W. A. HENRY, Judge.

Suit by Mrs. L. M. Dyer and others against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Longstreet,* for appellant.

*Barber & Henry,* for appellee.

Counsel on both sides filed elaborate briefs too long for publication.

REED, J., delivered the opinion of the court.

The appellees in this case, as mother and sisters of Charles Dyer, brought this suit against appellant for damages because of his death at Holly Bluff station on appellant's railroad in February, 1911. The jury returned a verdict for ten thousand dollars, from which this appeal is taken.

Charles Dyer, a young man, on February 16, 1911, boarded the train at Vicksburg to go to Midnight, a station on the Silver City branch of the Yazoo & Mississippi Valley Railroad. A part of this journey was over the main line of the railroad, and the remaining part was over the Silver City branch. It appears that on the day named Dyer was under the influence of liquor. He had a bottle with him on the train, and drank out of it more than once. He appears to have been in high spirits, and walked up and down the aisles of the coaches, and offered drinks to several parties. and endeavored to be generally sociable. He had with him a large hunting knife, which he exhibited somewhat to the discomfort of certain passengers. It is shown that. when the train would reach a station, he would go out of the cars, mix with the people, shaking hands with and talking to them, and would get aboard before the train would move from

the station. At one station he boarded the train while it was in motion. He was warned by Mr. Hoke, who was conductor on the train on the Silver City branch, that it was dangerous for him to board the train while it was moving. At Holly Bluff the train remained for about twelve minutes because it was necessary to do certain switching. Dyer got off the train and went to a grocery store about two hundred feet from the depot platform and there purchased three boxes of sardines, some crackers, and he also got salt and an onion. He delayed in returning to the train and was called by the conductor and, it also appears from the evidence, by other parties. There was a drain or ditch between the depot platform and the store. This he crossed going to the store and returning therefrom.

It is shown by the testimony of several witnesses that, when he reached the depot platform on returning, the train was still and had not started to move out. He got on the depot platform at the north end, about where the conductor was standing. and at the front platform of a combination car. It seems that the train consisted of an engine. box car, a combination car, the north end of which was for baggage and the remaining part for passengers, and a passenger coach. This combination car is referred to in the testimony as the baggage car; the front end has steps and a platform. As Dyer approached him. the conductor told Dyer to get on the front steps of the combination coach. Dyer did not do so. He replied to the conductor. "You let her go; I will get on." He then went to the front steps of the passenger coach, the last car on the train. The train had then started. It appears that it was just about to start when the conductor told Dyer to get on the steps of the combination car. Dyer endeavored to board the train at the front steps of the passenger car. At the time he had the articles which he had purchased at the store in his hands. From the testimony of some witnesses, it

would appear that he had something in each hand; other witnesses state that he had the articles at the time in one hand. He grasped the handholds on the car; one hand then slipped, and he seems to have swung around, holding by one arm, and then fell to the ground. The testimony is a little conflicting as to the manner of his grasp on the handholds and the slipping of his hand and his falling. It appears from the testimony, however, that the front trucks of the passenger coach ran over him. From the injury he received, he died in about an hour. It appears from the testimony that Dyer did not have money to pay his passage after he left the main line of the railroad, and that he borrowed money to purchase the articles at the store. The amount of his passage was handed to the conductor after the accident by some of the persons on the train.

It also appears that the platform at Holly Bluff was some six inches higher than other platforms on the same railroad line. It is one of the contentions by appellees that the negligence on the part of appellant was in constructing this depot platform six inches higher than the standard platform, and that, when Dyer fell from the train, he was caught between the platform and the car and his body was caused thereby to roll under the train. We cannot see, however, considering the whole case as presented, that the construction of this platform as shown was negligence, in the present case, to the extent of rendering appellant liable. Depot platforms are intended for the convenience of passengers in boarding a train, and in the construction of them the company could hardly be expected to anticipate such an occurrence as the one presented in this instance. The other contention on the part of appellees in the trial of the case, and which is pressed upon this appeal, is that Dyer was drunk to the extent that he was not able to take care of himself and was not responsible, and that the conductor failed to discharge his duty in looking after and caring

for him as a drunken and wholly irresponsible and disabled person; and also that the conductor violated his duty in telling him to get on the train while in motion.

The testimony does not show that Dyer was wholly unable to take care of himself because of his drunkenness; on the other hand, it seems that he moved about quite actively on the train and at the stations, and that he several times got off and on the train. It is also shown that he was able to go to the store, crossing the drain or ditch, make his purchases, and return. While he was under the influence of liquor, and it would seem that his powers of reasoning and deciding might have been somewhat clouded, yet he was not at all helpless physically.

Appellant complains that, in view of the facts presented in the case, the trial court erred in giving two instructions. which are as follows: "(5) The court instructs the jury for the plaintiffs that the fact that the deceased, Chas. Dyer, was under the influence of liquor, or was intoxicated at the time of his injury, does not relieve the defendant company from the duty to exercise reasonable care and prudence toward him as a passenger, and if you believe from the testimony in this case that the said Chas. Dyer was under the influence of intoxicating liquor to the extent that he was not responsible for his conduct, and was in that condition where he was incapable with reasonable safety to take care of himself, and this fact was known to the conductor in charge of defendant's train, then it was the duty of defendant to use all reasonable diligence, prudence, and foresight to prevent injury to the said Chas. Dyer while in such state of intoxication, and if you believe, from the testimony in this case, that the conductor knew that he was under the influence of liquor to the extent of not being responsible for his acts, and unable to take care of himself, if you believe from the evidence such condition existed, and that while in this condition the con-

ductor directed him to board the moving train, then the
defendant (is) guilty of negligence, and it is the duty
of the jury to find a verdict for the plaintiffs. (6) The
court instructs the jury that, if you believe from the tes-
timony in this case that the deceased was in that state
of intoxication that made him unable to care for himself,
and that this state of intoxication was known to the
conductor of the train, and that the conductor negligently
directed the deceased, while so intoxicated, if you be-
lieve that he was so intoxicated, to board the train, and
that the deceased attempted to board the train and was
thrown therefrom, and that the erection and maintenance
of the platform at the station at Holly Bluff was im-
proper and negligently constructed, and that these two
facts, or either of them, directly and materially contrib-
uted in causing the death of the deceased Dyer, then it
is your duty to promptly find a verdict for the plain-
tiffs.''

Appellant claims that it is relieved from liability by
the contributory negligence of Dyer. It will be noticed
that appellees claim that appellant is liable because Dy-
er's drunkenness was to the extent that he was disabled
from taking care of himself, and that he should have
received a greater degree of care and attention from the
conductor. It is stated in 39 Cyc. 534, that: ''The con-
dition produced by intoxication, being voluntary, does
not relieve the person injured from the necessity of ex-
ercising the ordinary care to avoid the injury required
under like circumstances of a sober man.'' ''Intoxica-
tion does not excuse the omission to use the same care
and prudence which are required of a sober man under
the same circumstances to protect himself against in-
jury.'' *L. & N. R. R. Co.* v. *Johnson,* 92 Ala. 204, 9
South. 269, 25 Am. St. Rep. 35. ''If his intoxication
contributes to his injury as the proximate cause, it is a
complete bar to an action for any damages sustained in
consequence thereof.'' *Fisher* v. *W. Va. & P. R. R. Co.,*
39 W. Va. 366, 19 S. E. 578, 23 L. R. A. 758

In the case of *Johnson* v *L. & N. R. R. Co.,* 104 Ala. 241, 16 South. 75, 53 Am. St. Rep. 39, it is stated that drunkenness does not exempt a person from the responsibility of contributory negligence. If intoxication renders a person reckless or indifferent to consequences, or inadvertent or thoughtless, and he fails to exercise due care, his failure or omission will not be excused because superinduced by intoxication. The law exacts from one voluntarily intoxicated the same degree of care and precaution to avoid injury that it would from a sober person of ordinary prudence under like circumstances.

In the case of *Meyer* v. *King,* 72 Miss. 1, 16 South. 245, 35 L. R. A. 474, it was decided: ''Voluntary intoxication by one of the age of discretion, but for which the injury complained of would not have occurred, is such contributory negligence as bars recovery for the merely negligent act of another.'' In that case the defendant sold a minor, who had attained the years of discretion, poison. It was shown that the minor, when he purchased the poison, was intoxicated. He drank it and died. It was held that the druggist was not liable because of the drunkenness of the minor.

In the instant case, it is very important for us to consider the extent of Dyer's intoxication in connection with the conduct of Mr. Hoke, the conductor. It is not shown that Mr. Hoke directed Dyer to board the train where he did. He told him to get on in the front of the combination car, where there were steps, and where the conductor then was, and before the train had gotten in motion to the extent of making it at all difficult to board. One of the witnesses, Mr. Henry, says that he heard the conductor tell Dyer to get on the front end when Dyer came on the depot platform; that the train was then standing; and that Dyer replied. ''Let her go,'' and that he (the witness) got on the front end of the baggage car, and that there was nothing to prevent Dyer from getting on at the same place.

It is clear that Dyer's drunkenness rendered him reckless and not as careful as he should be, but it cannot be said that he was helpless. What should the conductor have done other than to call Dyer when the train was about to start, and, when Dyer reached the conductor at the platform, to direct him to get on the train where the conductor was and where it was evidently safe to be boarded (this is shown by Mr. Henry's testimony), and where the conductor might have given some assistance, if such had been needed by Dyer? Can it be said that Dyer was so helpless and physically disabled as to require such assistance from the conductor as would be given a little child, or a person feeble through illness, or extreme age? The facts in the case show this was not his condition.

The appellant claims that the instructions numbered 5 and 6 above were ambiguous in their expressions, were not clear and definite as they should be, and that they did not indicate that degree of drunkenness as the turning point in the case which the laws designates as such. Appellant calls attention to the failure of the declaration in this case to alleged such drunkenness and present such case as the instructions attempted to present. It will be noted in the case of *Meyer v. King, supra,* the declaration alleges that the sale was made to the party "while he was intoxicated, from an excessive use of liquor, to such an extent that he was wholly incapable of exercising any reasonable degree of caution or prudence, and to a degree that was evident from his general appearance." By comparison it will be seen that the statement is quite different in the instructions complained of. It will also be seen, by reference to the case of *Railroad Co.* v. *Jackson,* 92 Miss. 517, 46 South. 142, that the instruction does not present clearly and definitely the law relative to the degree of drunkenness which is invoked by the appellees. That case was a suit against a railroad company for the death of a drunken passenger who

was drowned after alighting from the train. The declaration alleges that "the deceased was drunk to insensibility and utterly incapable of sitting, walking or standing; the appellant well knowing these facts." The court, in the opinion in that case, reversing the judgment for the plaintiff in the lower court, makes a clear distinction between a man generally under the influence of liquor and a man who was intoxicated to the point known as dead drunk; and, following the distinction in that case, it will be seen from the testimony before us in the present case that Dyer was not dead drunk, and that, while he was under the influence of liquor to the extent that he was rendered somewhat reckless, yet he was physically able to move about actively and without the assistance of others.

This is a sad case where a young man drank strong drink to excess, became indifferent to his physical safety, and suddenly, in this unfortunate condition, lost his life. His intoxication prevented him from taking proper precaution to avoid the injury which caused his death.

The trial court erred in giving the instructions 5 and 6, and the case is reversed and remanded.

*Reversed and remanded.*