WESTERN UNION TELEGRAPH COMPANY *v.* ROBERTSON.

[69 South. 680.]

1. TELEGRAPHS AND TELEPHONES.  *Punitive damages.  Louisiana rule. Trial.  Abstract instruction.  Action for damages.  Mental suffering.*

Where in an action against a telegraph company for negligent delay in delivering a message, the delay occurred at its office in New Orleans, Louisiana, the case is governed by the Louisiana law which is that for a principal to be liable in punitive damages for an act of its servant it must have authorized or subsequently ratified the act of the servant complained of, and in such case an instruction authorizing the jury to award punitive damages if the delay in delivering the telegram "was such as to amount in law to wilful disregard of the rights of plaintiff" was erroneous.

2. TRIAL.  *Abstract instruction.*

An instruction is erroneous where there is no evidence to support the theory upon which it is based.

3. ACTIONS FOR DAMAGES. *Damages for mental suffering. Louisiana rule.*

> While under the Louisiana law in an action against a telegraph company for negligent delay in delivering a dispatch, mental suffering may constitute an element of damage. Yet no recovery can be had for mental anguish unless the company had notice, from the language of the message or otherwise, that such damage would probably result from such negligence.

APPEAL from the circuit court of Adams county. Hon. E. E. BROWN, Judge.

Suit by Mrs. Gussie Robertson against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*J. B. Harris,* for appellee.

The message, as the court will see, was an interstate message from Natchez, in the state of Mississippi, to New Orleans, in the state of Louisiana, and the rules for awarding damages in any aspect of the case in the two jurisdictions are different. The court seems to have taken the view that there was evidence in the case warranting the imposition of punitive damages. Whether this evidence arose from acts done in Mississippi or acts done in Louisiana do not appear.

In Mississippi, the rule is that the principal is liable in punitive damages where the act is done by the agent in the course of his employment, whether authorized by the principal or not.

In Louisiana, the rule is that in order to render the principal liable in punitive damages for the act of the agent, the principal must authorize the act or subsequently ratify it. For Louisiana rule, see, *Ingram* v. *Light & Power Co.,* 55 So. 580; *Patterson* v. *R. R. Co.,* 34 So. 783.

Again, In Mississippi a recovery can only be had for mental anguish where the case would warrant the im-

position of punitive damages.   In Louisiana under the civil law, mental anguish can be recovered in a case of ordinary negligence.   See, *Graham* v. *W. U. Tel. Co.,* 34 So. 91.

We respectfully submit, however, that in no view of this case could punitive damages be awarded because there is no evidence whatever even tending to prove wilfulness, wantonness, recklessness or gross negligence. We hardly consider it necessary at this day to refer the court to the numerous cases in this state in which the rule for punitive damages has been announced. · If the rule announced by this court in two leading cases is the rule, then the instructions in this case submitting the question of punitive damages to the jury were erroneous.

In *Railroad Company* v. *Marlett,* 78 Miss. 872, the court says: ''For a wilful wrong that gives a cause of action for the imposition of exemplary damages, must be denoted by a wrongful act done with a knowledge of its wrongfulness.''

This rule has been repeatedly reaffirmed by this court in subsequent cases, particularly in the case of *Miller* v. *Telegraph Company,* in 97 Miss. 225, in which case the court says: ''There was no evidence from which the jury could have inferred that the delay in delivering the telegrams was characterized by malice, fraud, oppression, or wilful wrong, evincing a disregard of the rights of others, or by such wanton, reckless, or grossly careless conduct is as equivalent thereto.   A wrongful act, to which punitive damages are applicable, must not only be done with a knowledge of its wrongfulness, but must be characterized by one or more of the above elements,'' citing *Railroad Co.* v. *Marlett,* 78 Miss. 872; *Cocke* v. *Telegraph Co.,* 84 Miss. 380.   Other cases in point are the following: *Baker* v. *Cumberland Telephone Co.,* 85 Miss. 486; *Telephone Co.* v. *Allen,* 89 Miss. 832; *Hardy* v. *Railroad Co.,* 100 Miss. 132; *Express Co.* v. *Burke & McGuire,* 61 So. 312.

Now, a case could not, it seems to us, be freer from any of the circumstances enumerated in the *Miller case, supra.* The message was telephoned to the Natchez operator. It was addressed to the sendee at Race street. The operator got it Ray street. The court will see for itself that this was not by any means an unnatural mistake. It is a case of *'idem sonans'* and if the court will undertake to pronounce the two words it will see how easy and natural it was for the operator who was receiving this message to have made this mistake. This could not even be characterized as negligence. It was a simple mistake which any one would be liable to make naturally, and this mistake was the cause of the trouble. See 37 Cyc. 1663, See specially *Cameron* v. *W. U. Tel. Co.,* 74 S. E. 929, holding that there is no presumption that a message telephoned is correctly received.

It is well settled that a mistake will not warrant the imposition of punitive damages. See, 4 Ency. of Ev. page 8 (note); *Inman* v. *Ball,* 65 Iowa, 543; *Smith* v. *Walker,* 57 Mich. 556; *Railroad Co.* v. *Christmas,* 89 Miss. 686; *Duncan* v. *Tel. Co.,* 93 Miss. 500.

It was error to refuse the fourth and sixth instructions asked for the defendant. This much for the Mississippi end of the transaction.

This mistake having been made by the operator, the message reached New Orleans, addressed to Miss Gussie Robinson, 1016 Ray street. It is hard to conceive what more the Telegraph Company could have done after the message reached New Orleans than what was done in an effort to make the delivery. It is shown that they examined the city directory, and no such street as Ray street could be found; a message boy was sent out to Royal street supposing that that might be the street, but he could not find any such number; a postal card was mailed, addressed to "Miss Gussie Robertson, General Delivery, City," and another to "Miss Gussie, 1016 Ray street;" and a service message was sent to Natchez

that there was no such street as Ray street. All of this appears clearly and unmistakably and undisputedly in the record. On the following morning, a message giving the correct address reached New Orleans, and the message was delivered at ten-forty a. m. It was. a message not showing on its face any special urgency, nevertheless it is hard to conceive what else, if anything, could have been done at the New Orleans office. It does not distinctly appear upon the record at what time on Monday morning the service message was received in New Orleans, but there is nothing whatever to indicate any delay. So, we say that so far as the question of punitive damages is concerned, it must be laid out of the case. The mistake that was made was made innocently, and the operator at Natchez, Mrs. Abernathy, was acting in perfect good faith, and punitive damages can never be awarded for an act done in perfect good faith. See, Sedgwick on Damages (9 Ed.), page 745, sec. 383a.

There is no circumstance in the case which could be contorted into evidence of wilfulness or intentional wrong. So, we say, the court manifestly erred in submitting the question of punitive damages to the jury.

We submit, furthermore, that the court erred in giving to the jury the first instruction asked by the plaintiff, and in modifying the second and ninth instructions given for the defendant.

The first instruction for the plaintiff was manifestly asked upon the assumption that some negligence was shown or some circumstance tending to prove negligence in New Orleans, and the modification of the defendant's second instruction by inserting these words after the word negligence in the second line ''that the delay was caused by negligence of the New Orleans office,'' and by inserting in the ninth instruction after the words, ''mental anguish'' at the close of the instruction the words ''unless from the evidence they further believe that the delay was the result of negligence at the New Orleans office.''

The court erred in giving the first instruction for the plaintiff and in modifying the second and ninth instructions for the defendant, because there is absolutely no evidence in record that the delay was caused by any negligence in the New Orleans office. If making a mistake in the address given over the telephone was negligence, this manifestly was the cause of the delay and this negligence, if any, occurred in Mississippi and not in Louisiana, and there can be no possible mistake about this. But, if the case is to be rested on negligence in Louisiana, if it could possibly be held that the record contains any circumstance which could be submitted to the jury on this ground, then we say that there could not be a recovery in this case of the damages claimed for two reasons:

First, because it is perfectly manifest that the injury which the plaintiff sustained or trouble to which she was subjected did not result proximately from the negligence complained of, but on account of her sick child and her anxiety and distress on that account. She says that she spent sleepless nights even after she received the telegram, and states positively that these sleepless nights were caused by her child's sickness. She had been notified that her child was dying on September First, when she sent a message telling her husband that the child had typhoid, that he had better come and bring some money. From the time of the announcement of the dying condition of her child, of course, her natural anxiety arose. Of course, her distress knew no bounds. All of this would have occured whether her telegram would have been delayed or not. The delay in the telegram did not deprive her in any way of the comfort and society of her husband, because her husband did not intend to come and did not come. The record clearly shows that. The delay of the message did not cause any delay in her getting the money, because the message from her husband announced that he would remit the

money on Tuesday, and the money was received on Tuesday, and she knew on Monday morning that the money could be sent on Tuesday. So, we say plainly the plaintiff's suffering could not be in any way the proximate result of any delay in delivering the message from her husband.

Second, even if it could by any stretch be said that her suffering was caused by the delay in the message, the Telegraph Company could not be held liable because none of the special circumstances and conditions giving rise to this suffering were brought to its notice either by the language of the message, or otherwise. The rule is too well settled to need citation of authority. But, the rule applies as well in cases where it is sought to recover for mental anguish as in other cases. The rule is laid down in 37 Cyc. page 1781. The general rule is well settled in Mississippi. *Western Union Tel. Co.* v. *Clifton,* 68 Miss. 307; *Jacobs* v. *Telegraph Co.,* 76 Miss. 278; *Western Union Tel. Co.* v. *Pallotta,* 81 Miss. 216; *Western Union Tel. Co.* v. *Pierce,* 82 Miss. 487; *Jennings* v. *Express Co.,* 86 Miss. 329; *Telegraph Co.* v. *Foster,* 23 So. 581; *Johnson* v. *Western Union Tel. Co.,* 79 Miss. 58.

In the case, as we have shown, there was nothing whatever to bring to the attention of the Telegraph Company the fact that the plaintiff's child was in a dying condition.

*Chas. F. Engle,* for appellee.

It was the theory of the appellee that the delay occurred in New Orleans and was occasioned by negligence of the New Orleans office and the instructions given by the court clearly and properly announce the law as respects that theory. This appellee unquestionably suffered great mental anguish and went through an ordeal of anxiety which beggars description.

In Louisiana the law is plain that damages for mental anguish is recoverable where simple actionable negli-

gence is shown. *Grayham* v. *Western Union*, 34 So. 91.

The law as laid down in the Grayham case is explained and affirmed in *Bourg* v. *Brownell Drew Lumber Co.*, 45 So. 972, at page 978. Also affirmed in *Jazsa* v. *Maroney*, 51 So. 908, at page 910.

The amount of the verdict returned by the jury is not excessive for the mental anguish sustained and the fact that the court gave the plaintiff certain instructions warranting punitive damages under a certain state of facts would not justify a reversal even if there was no evidence to support the state of facts justifying punitive damages, for it is manifest that this instruction did not operate to the prejudice of appellant as the result reached was right and the damages awarded were in no way excessive and not more than enough to compensate her for the mental anguish suffered. This point was decided in *Bradford* v. *Taylor*, 37 So. 812.

The instruction complained of in that case reads as follows: "(6) The jury are allowed, and, indeed, it is their duty in such cases as this, where the law provides no other penalty, to consider the interest of society, as well as justice to the plaintiff, and by their verdict, while they make just compensation, also inflict proper punishment for the disregard of public duty, if they should feel justified by the evidence."

In passing upon this instruction the court in that case said that the instruction was erroneous and ought not to have been given under the facts of the case, but that as the amount of the verdict found by the jury was not excessive and did not exceed the amount the plaintiff was entitled to recover under the facts of the case that it was manifest that the rights of the defendant were not prejudiced and the case was affirmed. *Bradford* v. *Taylor*, 37 So. 812.

Only three instructions were given for the appellee and it is respectfully submitted that these instructions clearly and properly state the law as applied to the

facts in this case and that it was upon.the first of these instructions that the verdict was found.

Smith, C. J., delivered the opinion of the court.

This is an appeal from a judgment awarding appellee damages for the failure on the part of appellant to promptly transmit and deliver a telegram. Appellee and her husband lived in the city of Natchez, Mississippi, but on the 1st day of September, 1912, she was in the city of New Orleans, at the home of her brother. She had with her a son, who was then supposed to be at the point of death. On that day, at about four o'clock p. m., she sent to her husband the following telegram:
"J. J. Robertson, Natchez, Miss.

"Willie has typhoid. You had better come. Bring some money.

"[Signed]   Gussie."

About six o'clock the same afternoon, Mr. Robertson called up by telephone the office of the Western Union Telegraph Company at Natchez and gave to its local manager, Mrs. M. M. Abernathy, a telegram for transmission which, according to his testimony, was as follows:

"Mrs. Gussie Robertson, 1016 Race Street, New Orleans, La.

"I will send some money Tuesday.

"[Signed]   Johnnie."

Mrs. Abernathy states that she understood Mr. Robertson to say Ray street, so the telegram was sent to New Orleans, addressed to 1016 Ray street, instead of 1016 Race street. Upon receipt of the telegram at New Orleans, appellant's employees in charge of that office ascertained by consulting the various city directories that there was no such street as Ray street in the city. The Natchez office was then requested by service message to furnish a better address. It does not appear

exactly when this service message was sent from New Orleans, or when it was received at Natchez. The testimony of the New Orleans manager was that it was sent "at once" after it was ascertained there was no such street in New Orleans as Ray street. The testimony of Mrs. Abernathy, of the Natchez office, was that immediately upon receiving the service message she "got in communication with the party that sent the message over telephone and he said, 'Oh! that was Race street, instead of Ray street.' " and that she then wired the New Orleans office the correct address. This conversation was denied by Robertson, who stated that, on the contrary, he called up appellant's Natchez office on the morning of September 2d and was informed the telegram has been delivered to the sendee on the day before.

When the reply to this service message was sent to the New Orleans office does not appear from Mrs. Abernathy's testimony, but according to the evidence of the New Orleans manager it was received in New Orleans on the morning of the 2d day of September, the hour not being given. After receipt of the correct address, the telegram was delivered on the morning of September 2d at ten-forty a. m., according to the evidence of appellant, but, according to that of appellee, it may have been delivered an hour or more later.

Mr. Robertson states that in giving this message to Mrs. Abernathy he spelled the name of the street for her, "R-a-c-e-," and that she repeated the name to him, pronouncing it Race street, but did not spell it. Mrs. Abernathy's testimony is silent with reference to the spelling of the name of the street by Robertson; but she states that she understood him to say Ray street, and repeated the message to him as she understood it. It will be observed that the sound of the words "Race street" and "Ray street" are very similar, and the one can easily be mistaken for the other. If appellant in

fact spelled the name out for Mrs. Abernathy, however, this criticism, of course, will not apply.

Mrs. Robertson testified that she was in great distress of mind at the time she sent the telegram to her husband because of the fact that her child was dying; that she was away from home, without money to pay the expenses to be incurred in the event of his death; and that she expected her husband to come at once in response to her telegram, and that, in event he did not do so, she would hear from him, meaning, we suppose, that he would advise her why he did not come.  Had Mr. Robertson left Natchez immediately upon receipt of his wife's message, he could have arrived in New Orleans at twelve o'clock that night; the next train upon which he could have arrived being seven o'clock the next morning.  A relative of Mrs. Robertson met both these trains, the morning train being late, so that this relative did not return to the home of Mrs. Robertson's brother, where she was then visiting, until nine o'clock, a. m. When her husband did not come on either of these trains, and she did not hear from him, Mrs. Robertson, before receiving his telegram, according to her testimony, suffered great mental anguish, resulting practically in a nervous breakdown, from which she did not recover for some days.

The contention of counsel for appellee is that she is entitled to recover in event the delay in delivering the telegram was the result of negligence in either the Natchez or New Orleans offices of appellant; but he states more than once, and that was evidently the theory upon which he proceeded in the court below, that the evidence—some of which we have omitted as having no possible bearing on the legal questions hereinafter discussed—demonstrates that the Natchez office received the telegram from Robertson over the telephone correctly; that is, that Mrs. Abernathy made no mistake in the name of the street when she received the telegram

from Robertson over the telephone, but that she re-
cived it as he gave it, Race street; that it was sent in
the first instance to the New Orleans office with the
proper address, that is, 1016 Race street; and that the
failure to deliver until ten-forty the next morning was
caused by the negligence of the New Orleans office. The
evidence does not bear out this conclusion, but it is in
accordance with what we have hereinbefore stated. The
negligence in the New Orleans office, if such there was,
consists of delay in delivering the message after the cor-
rect address was received.

By one instruction granted at the request of appellee
the jury was authorized to award punitive damages in
event the delay in delivering the telegram "was such as
to amount in law to willful disregard of the rights of
the plaintiff." This instruction, in so far as recovery
predicated upon negligence occurring in appellant's New
Orleans office is concerned, is clearly erroneous, for the
rule in Louisiana, as we understand it, is that for a
principal to be liable in punitive damages for an act of
his servant he must have authorized or subsequently
ratified the act of the servant complained of. This fea-
ture of the rule is not only omitted from the instruction,
but the instruction would have been erroneous, even had
it been included therein, for the reason that there is no
evidence that the negligent conduct of those in charge
of appellant's New Orleans office, if such in fact there
was, was either authorized or approved by it. *Ingram*
v. *Railroad Co.,* 128 La. 933, 55 So. 580; *Patterson* v.
*Railroad Co.,* 110 La. 797, 34 So. 783.

By another instruction requested by appellee the court
charged the jury that, in event they should believe from
the evidence "that there was an unreasonable delay in
delivering this telegram after its receipt in New Or-
leans, owing to the negligence of the New Orleans, La.,
office of the defendant, then they should find a verdict
for the plaintiff, and may award her damages for such

mental pain and anguish, if any, which they may believe from the evidence the plaintiff suffered because of the unreasonable delay in delivery of said telegram." As we understand the Louisiana law, mental anguish may constitute an element of damages in cases of this character (*Graham* v. *Western Union Telegraph Co.*, 109 La. 1069, 34 So. 91); but we are also of the opinion that the rule in that state must be in accord with the practically universal rule governing the recovery of such damages elsewhere:

"That there can be no recovery on this ground, unless the telegraph company had notice, from the language of the message or otherwise, that by reason of its negligence such damages would be likely to result." 37 Cyc. 1781.

We have been referred to no Louisiana case so holding; but we do not understand counsel for appellee to contend that the rule is otherwise, but that in his opinion the rule was herein complied with; that the two telegrams, when read together, sufficiently indicate that mental anguish would probably result from delay on the delivery of the second. With this conclusion we cannot agree. Admitting, for the sake of the argument, that if the second telegram indicated, or that if appellant had been advised, that it was sent in reply to the first, that the conclusion reached by counsel for appellee would necessarily follow, there is nothing in the telegram to clearly indicate it was in reply to the first, or that it was from the sendee of the first to the sender thereof; and there is no pretense that appellant's employees at Natchez were advised that it was in fact a reply to the first telegram, or of the purpose for which it was sent.

*Reversed and remanded.*