**KANSAS CITY SOUTHERN RY. CO. v. NECTAUX.**

Circuit Court of Appeals, Fifth Circuit.
May 21, 1928.

No. 4990.

1. **Master and servant ⊂⊃101, 102(9), 129(7) —Railroad must must use reasonable care to furnish employees clear track over which to run; where breach of obligation to furnish clear track is concurring cause, negligence of another cannot defeat recovery (Employers' Liability Act [45 USCA §§ 51–59]).**

Under Employers' Liability Act (45 USCA §§ 51–59; Comp. St. §§ 8657–8665), a railroad is charged with absolute and continuing duty of using reasonable care to furnish its employees clear track over which to run, and, if breach of such obligation is concurring cause, negligence of another will not defeat recovery.

2. **Master and servant ⊂⊃86—Rule of local law imposing liability may be enforced in suits under federal statute (Employers' Liability Act [45 USCA §§ 51–59]).**

A rule of local law imposing liability may be enforced in suits under Employers' Liability Act (45 USCA §§ 51–59; Comp. St. §§ 8657–8665).

3. **Railroads ⊂⊃260—Railroad owning tracks and permitting another to use them, was liable to employee for negligence of other's employees (Employers' Liability Act [45 USCA §§ 51–59]).**

Where defendant was real owner of railroad held in name of K. Company, and had power to vest legal title in itself at any time, and K. Company under contract gave G. Company joint trackage rights with defendant over line, G. Railroad Company occupied position of defendant's licensee, and defendant *held* liable in suit under Employers' Liability Act (45 USCA §§ 51–59; Comp. St. §§ 8657–8665), to employee for injuries caused by negligence of employees of G. Company.

4. **Railroads ⊂⊃260—Licensee's agent, having leave to do so, ordering train on defendant's track causing collision injuring defendant's employee, was defendant's agent for that purpose.**

Where defendant, in complete control of road over which licensee's trains also ran, left it to licensee's agent to order his train on defendant's track at junction, and he did so, and collision with defendant's train resulted, causing injury to defendant's employee, licensee's agent was defendant's agent for that purpose.

In Error to the District Court of the United States for the Western District of Louisiana; Benjamin C. Dawkins, Judge.

Action by J. L. Nectaux against the Kansas City Southern Railway Company. Judgment for plaintiff (18 F.[2d] 681), and defendant brings error. Affirmed.

George Janvier, of New Orleans, La., and J. D. Wilkinson, of Shreveport, La. (Wilkinson, Lewis & Wilkinson, of Shreveport, La., and Pujo, Bell & Hardin, of Lake Charles, La., on the brief), for appellant.

Jas. D. Barksdale, Otis W. Bullock, and Howard B. Warren, all of Shreveport, La., and S. P. Jones, of Marshall, Tex. (Franklin Jones, of Marshall, Tex., and Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, La., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Appellee brought suit under the Federal Employers' Liability Act (45 USCA §§ 51–59; Comp. St. §§ 8657–8665) to recover damages for personal injuries resulting from a collision alleged in general terms to have been caused by the failure of appellant, his employer, to furnish him with a safe place to work. At the close of the evidence both parties moved for a directed verdict. The motion of appellant was denied, and that of appellee was granted, to the extent of fixing liability, and it was left to the jury to find the amount of damages. A verdict for $50,000 was returned, but, on consideration of a motion for new trial, appellee was required to enter a remittitur for $20,000, which he did, a new trial was refused, and judgment was entered for $30,000. Error is assigned to the action

of the court above indicated. No other errors are assigned.

The record supports the following conclusions as to the material facts:

The Kansas City, Shreveport & Gulf Railway Company probably owns the track on which the collision occurred, and in 1895 granted the right to the Kansas City, Pittsburg & Gulf Railroad Company to operate its property for 50 years. Appellant, the Kansas City Southern Railway Company, owns all the stock in the first-named company, except qualifying shares of directors, both companies having the same president and other officers, and it acquired all the rights of the second named company in 1900. By contracts executed in 1905 and 1910, ostensibly between the Kansas City, Shreveport & Gulf Railway Company and the Beaumont, Sour Lake & Gulf Railway Company, the Gulf Coast Lines was given joint trackage rights with appellant over the line. Both roads are extensive interstate systems. All trains moving over the track from De Quincey, La., to Beaumont, Tex., whether belonging to appellant or the Gulf Coast Lines, move under orders of appellant's train dispatcher at Shreveport, to whom all telegraph operators on the line report the movement of all trains passing their stations. Appellant also issues all time-cards and makes the rules governing the movement of all trains. The employees of the Gulf Coast Lines are furnished with switch keys by appellant, are subject to discipline by appellant's trainmasters and dispatchers, may be excluded from the joint trackage by appellant, if they are incompetent, and may be discharged by the Gulf Coast Lines for disobedience of rules or orders issued by appellant.

Appellee was a locomotive engineer employed by appellant. On November 24, 1924, he left Port Arthur, Tex., for Leesville, La., a point beyond De Quincey, La., in charge of the engine of a freight train designated as extra No. 491. When it reached Beaumont it was made the second section of train No. 56, which was a regular train and on the time-cards. Second No. 56 left Beaumont an hour late. When it reached Starks, La., about 16 miles from De Quincey, it was stopped by the board and received orders from appellant's dispatcher to take the siding to let two passenger trains proceeding in the same direction go by. After they had passed, second 56 continued on its way at 1:05 a. m., still late, but how much is not shown. The delay at Starks was about 40 or 50 minutes.

At C. S. Junction, about a mile from De Quincey, where the track of the Gulf Coast Lines joins that of appellant, there was a small building without a door, called a shack, where a train register was kept. There was no telegraph operator at C. S. Junction, and no one in charge of the register.

A wild freight train of the Gulf Coast Lines, designated as extra No. 105, made up at De Quincey, moving on orders issued by appellant's dispatcher at Shreveport at 12:50 a. m., arrived at C. S. Junction at 1:20. Hales, its conductor, entered his train on the register and handed his engineer a slip, indicating he had checked it, showing the number of trains that passed, including No. 56, and that they carried no signals. It appears, however, that there was an entry on the register showing that No. 1/56 had arrived at 11:59 p. m., carrying green signals. This would indicate to a railroad man that the first section of train No. 56 had passed and that a second section was following. There is nothing in the record, however, to show how closely the second section should have followed, or what was the schedule of No. 56. Hales could not be found and did not testify, and the record does not show that he had knowledge of the rules or time-cards. No mention of either train was made in the orders issued to the other by appellant's dispatcher. Extra No. 105 was not on the time-cards.

Extra No. 105 left C. S. Junction at 1:22, and about 4 miles from there had a head-on collision with second No. 56, at 1:40 a. m. The night was dark and foggy, and neither of the engineers saw the headlight of the other train until it was too late to avoid the collision. Appellee was seriously and permanently injured, without any fault on his part.

The District Court found, as indicated by brief opinions in the record, that appellant occupied the position of lessor of the track, and under the law of Louisiana was bound for any negligence of the agents and employees of the Gulf Coast Lines, the lessee, and, further, that appellant had violated its duty as employer to furnish appellee a safe place to work.

It is contended by appellant that there was no breach of duty on its part, and that the accident was caused solely by the negligence of Hales, who was not its employee, in not acting on the information shown on the train register as to No. 56 carrying green signals; that it was not the lessor of the road, as both it and the Gulf Coast Lines were lessees of the Kansas City, Shreveport & Gulf, a separate corporation, and it is not

responsible for the negligence of the employees of the Gulf Coast Lines.

[1] A railroad is charged with the absolute and continuing duty of using reasonable care to furnish its employees a clear track over which to run. If the breach of this obligation is a concurring cause, the negligence of another will not defeat a recovery. Santa Fé Pacific R. R. Co. v. Holmes, 202 U. S. 438, 26 S. Ct. 676, 50 L. Ed. 1094; Gila Valley, etc., R. R. Co. v. Lyon, 203 U. S. 465, 27 S. Ct. 145, 51 L. Ed. 276.

[2] It is settled that a railroad is responsible to a passenger for damages occasioned by the negligence of a licensee using its tracks. Illinois Central R. R. v. Barron, 5 Wall. 90, 18 L. Ed. 591. The decisions are not harmonious in applying this rule to an employee, but in Louisiana an employee of a railroad permitting another to use its tracks jointly may recover from his employer for injuries caused by the negligence of the agents of the licensee, though the rule is different as applied to the employees of the licensee. It is not necessary that the technical relation of lessor and lessee, in the sense that the entire operation of the road is turned over to the lessee, should exist. The rule is the same if there is contemporaneous joint usage of the road. Ingram v. La. & N. W. R. Co., 128 La. 933, 55 So. 580; Taylor v. La. & N. W. R. Co., 129 La. 113, 55 So. 732; Bailey v. La. & N. W. R. Co., 129 La. 1029, 57 So. 325. A rule of local law imposing liability may be enforced in suits under the Federal Employers' Liability Act. North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159.

[3] It is reasonably certain that appellant is the real owner of the road and has the power to vest the legal title in itself at any time it sees fit; and there could be no doubt that the Gulf Coast Lines occupied the position of its licensee, so as to bring the employees of appellant within the rule adopted in Louisiana.

[4] Furthermore, it hardly can be said appellant was without fault. It was in complete control of the road, issued all timecards, and made the rules for the running of all trains over its line. Appellant's dispatcher knew second 56 was at Starks, and its probable time of departure, before he issued orders to extra 105. If each of these trains had been notified of the other, and given specific orders as to passing, the accident could have been prevented. It is doubtful that merely having a train register at a point such as C. S. Junction is a proper way of running an extensive railway system. It certainly did not prove to be a safe way on the night of the accident. Had there been a telegraph operator, or even a station master, at C. S. Junction, there would have been no collision.

Hales, the conductor of extra 105 was bound to know that No. 56, a regular train, was on the track; but he was not charged with knowledge of the second section. When he noted that train 56 had passed 20 minutes before he arrived, it is not greatly surprising that he failed to also note it carried green signals. It was appellant's duty to use reasonable care to furnish appellee a clear track. It was in full control of the movement of extra 105, which did not become a menace to second 56 until it passed the junction. It was left to Hales to order his train upon appellant's track, and he was appellant's agent for that purpose.

We think the verdict is sustainable on either ground adopted by the District Court, and find no reversible error in the record.

Affirmed.