YAZOO & M. V. R. CO. *v.* ALEXANDER.

(Division A. Feb. 28, 1938.)

[179 So. 266. No. 33070½.]

Dent, Robinson & Ward, of Vicksburg, Burch, Minor & McKay, of Memphis, Tenn., and E. C. Craig, of Chicago, Ill., for appellant.

656

Clements & Clements, of Rolling Fork, for appellee.

Argued orally by **R. L. Dent, Jr.**, for appellant, and by **W. H. Clements**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

On the verdict of a jury, Sarah Alexander, appellee, recovered a substantial judgment for damages against the Yazoo and Mississippi Valley Railroad Company, appellant. Recovery was had upon the following facts:

On Friday, March 26, 1937, appellee desired to return to her home at Spanish Fort, Miss.; she had been in Jackson as a refugee from high water under the care of the Red Cross. On that morning, having an order for a ticket which she presented to the ticket agent at Jackson, she was told by him that her route would be via Vicksburg. She rode to Vicksburg, thence north towards Kelso, at which point she disembarked, to be transported on what is called the "Mud Line" to Spanish Fort, her point of destination. She said that the conductor told her he did not know whether the trains were running on the "Mud Line" or not. She arrived at Kelso at about 9:15 in the morning, there was no depot there, and she had to spend the day until about 4:45 in the afternoon in a pagoda, or shelter with no sides. It was raining intermittently, and she and her two children traveling with her became wet and cold. At 4:45 the same afternoon she was transported back to Jackson via Vicksburg. She remained in the depot in Jackson until 6 o'clock on the morning of the 27th, when she took a train for her home via Yazoo City. She left the train at Yazoo City, remaining in the depot there from 9 a. m.

until 6 p. m. Her purpose in leaving the train at Yazoo City is not disclosed by this record. She was about four months advanced in pregnancy, had felt pains in her stomach on the train, and while in the depot at Yazoo City, about 2:30 in the afternoon, there was an occurrence which presaged premature childbirth. She suffered pain during that day, and at 6 o'clock she found friends who transported her in a truck to Anchorage and then on to Holly Bluff, where she stayed until Monday morning, when she again boarded a train and was carried to a station near Spanish Fort, where she chose to leave the train. About a week later she had a miscarriage and finally, on the advice of her physician, was sent to the Charity Hospital in Vicksburg, being threatened with septicemia.

The only sharp conflict in the evidence was that the conductor of the train from Vicksburg north testified that he told appellee to remain on the train and get off at Cary, north of Kelso, where there was a depot and she could be returned via Vicksburg to Jackson, as the water prevented trains running from Kelso to Spanish Fort. Appellee denied this and said the conductor told her that her ticket entitled her to ride to Kelso.

The attending physician testified that the exposure and the wait at Kelso might have brought about the subsequent miscarriage.

It is contended that the court erred in granting the following instruction for the plaintiff: "This court instructs the jury for the plaintiff, that if you believe from the evidence that defendant delivered to plaintiff a ticket from Jackson, Mississippi, to Spanish Fort, Mississippi, a station on one of its lines of Road, and if you further believe from the evidence that the ticket agent of defendant routed the plaintiff by way of Vicksburg and Kelso, also Stations on its lines and if you further believe from the evidence that the defendant had no trains for carrying passengers running on the line from Kelso to

Spanish Fort because of overflow or highwater being over its tracks, and you further believe from the evidence that this condition had existed for some weeks, and you further believe from the evidence that plaintiff was carried by Vicksburg to Kelso and put off of the train without warning from the defendant and you further believe from the evidence that she had to remain at Kelso in the cold and rain until late in the afternoon when she was taken aboard another of defendant's trains and carried back to Jackson and routed by way of Yazoo City, *and you further believe from the evidence that she was put off at Yazoo City, some distance from her destination, then the defendant was negligent in its duty owed the said plaintiff* as a passenger, and if you further believe from the evidence *that said negligence* was the proximate cause of the injury, if any, to plaintiff, then it is your sworn duty to find a verdict for the plaintiff and assess her damages in such sum as will compensate her therefor warranted by the evidence, not to exceed the amount sued for.'' (Italics ours.)

We think the giving of this instruction on behalf of the plaintiff was reversible error. There is no evidence in this record that tends to show that the appellee did not voluntarily leave the train at Yazoo City. There is no evidence as to the distance from Yazoo City to the point of her destination, in fact, the evidence tended to show that she left the train from choice and intended to secure a ride, across the country with friends, from Yazoo City to her destination. At least there is nothing in the record to show what caused her to leave the train at Yazoo City and remain there all day. The latter part of the instruction told the jury that the occurrence at Yazoo City might be found to be a part of the negligence attributed to the railroad and sued for by the appellee. The instruction is without any evidence to support it, and on the close question of fact put an additional burden upon the railroad.

In the state of the record there is no proof tending to show any duty imposed upon the railroad by virtue of the fact that appellee left the train and remained at Yazoo City. Bank of Newton v. Simmons, 96 Miss. 17, 49 So. 616; Hooks v. Mills, 101 Miss. 91, 57 So. 545; Yazoo Railroad Co. v. Dyer, 102 Miss. 870, 59 So. 937; Western Union Telegraph Co. v. Robertson, 109 Miss. 775, 69 So. 680.

We think the following instruction, refused the defendant, should have been given: "The court instructs the jury for the defendant that if you believe from the evidence that any witness who has testified in this case is interested in the result of this suit as a party or otherwise, then, in determining the credit to be given such witness, the jury may take into consideration such interest as the evidence shows such witness has, together with all the other facts and circumstances disclosed by the evidence, if any, which will aid the jury in arriving at and determining the credit to which the testimony of such witness is entitled."

There was a sharp issue of fact between the testimony of the appellee and appellant's conductor, so that this is not a case where a single person would be pointed out by the instruction. Section 1527, Code of 1930, was fairly reproduced in this instruction. It was first approved in the case of Allen v. Lyles, 35 Miss. 513. The substance of this instruction has been approved in criminal cases such as Callas v. State, 151 Miss. 617, 118 So. 447, and is not rendered objectionable by section 586, Code of 1930, there being more than two witnesses testifying to material facts at issue in the case.

Reversed and remanded.